UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JARVIS L. DICKSON,                )    NO. EDCV 09-2168-CT
                                  )
          Plaintiff,              )    OPINION AND ORDER
                                  )
     v.                           )
                                  )
MICHAEL J. ASTRUE,                )
Commissioner of                   )
Social Security,                  )
                                  )
                                  )
          Defendant.              )
_____ )

     For the reasons set forth below, it is ordered that the matter be **REMANDED** pursuant to sentence four of 42 U.S.C. Section 405(g) to defendant Commissioner of Social Security ("the Commissioner") for further administrative action consistent with this opinion and order.

## SUMMARY OF PROCEEDINGS

     On November 23, 2009, plaintiff, Jarvis L. Dickson ("plaintiff"), filed a complaint seeking judicial review of the denial of benefits by the Commissioner pursuant to the Social Security Act ("the Act").  On February 26, 2010, plaintiff filed a brief.  On March 29, 2010, the Commissioner filed an opposition brief.

## SUMMARY OF ADMINISTRATIVE RECORD

### 1.   Proceedings

On July 27, 2006, plaintiff filed applications for disability insurance benefits and Supplemental Security Income ("SSI")], alleging disability since July 25, 2004 due to bulging disc on lower back, anxiety attacks, and depression.  (TR 154-64).[1]  The applications were denied initially and upon reconsideration.  (TR 104-07, 110-14).

On August 27, 2007, plaintiff filed a request for a hearing before an administrative law judge ("ALJ").  (TR 115).  On January 13, 2009, plaintiff, represented by a non-attorney, appeared and testified before an ALJ.  (TR 31-74).  The ALJ also considered the testimony of a vocational expert ("VE").  On April 15, 2009, the ALJ issued a decision that plaintiff was not disabled, as defined by the Act, because he is able to perform his past relevant work as a greenskeeper, auto sales person, substance abuse counselor, manager or retail agent, and case manager , and that he thus was not eligible for benefits.  (TR 24-30).  On June 10, 2009, plaintiff filed a request with the Social Security Appeals Council to review the ALJ's decision.  (TR 13).  On October 22, 2009, the request was denied.  (TR 1-4).  Accordingly, the ALJ's decision stands as the final decision of the Commissioner. Plaintiff subsequently sought judicial review in this court.

### 2.   Summary Of The Evidence

The ALJ's decision is attached as an exhibit to this opinion and order and, except as otherwise noted, materially summarizes the evidence

---

[1]   "TR" refers to the transcript of the record of administrative proceedings in this case and will be followed by the relevant page number(s) of the transcript.

2

in the case.

PLAINTIFF'S CONTENTIONS

Plaintiff contends as follows:

1. The reasons advanced for rejecting the opinions of independent examining physician Thompson are legally insufficient; and,

2. The ALJ erroneously failed to consider the side effects of plaintiff's medication regimen.

STANDARD OF REVIEW

Under 42 U.S.C. §405(g), this court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and, (2) the Commissioner used proper legal standards. Macri v. Chater, 93 F.3d 540, 543 (9th Cir. 1996). Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 401 (1971), but less than a preponderance. Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

When the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, however, the Court may not substitute its judgment for that of the Commissioner. Flaten v. Secretary of Health and Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995). The court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. §405(g). Remand is appropriate where additional proceedings would remedy defects in the Commissioner's decision. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).

///

///

///

3

DISCUSSION

1.   The Sequential Evaluation

A person is "disabled" for the purpose of receiving social security benefits if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation for determining whether a person is disabled.   First, it is determined whether the person is engaged in "substantial gainful activity."  If so, benefits are denied.

Second, if the person is not so engaged, it is determined whether the person has a medically severe impairment or combination of impairments.   If the person does not have a severe impairment or combination of impairments, benefits are denied.

Third, if the person has a severe impairment, it is determined whether the impairment meets or equals one of a number of "listed impairments."  If the impairment meets or equals a "listed impairment," the person is conclusively presumed to be disabled.

Fourth, if the impairment does not meet or equal a "listed impairment," it is determined whether the impairment prevents the person from performing past relevant work.   If the person can perform past relevant work, benefits are denied.

Fifth, if the person cannot perform past relevant work, the burden shifts to the Commissioner to show that the person is able to perform other kinds of work.   The person is entitled to benefits only if the

4

1  person is unable to perform other work.  20 C.F.R. §§404.1520, 416.920;

2  Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).

3       2.   Issues

4            A.   Dr. Thompson's Opinion

5       Plaintiff contends that the ALJ materially erred in rejecting the

6  opinion of Bruce Thompson, M.D., an examining physician in this matter.

7  After examining plaintiff, Dr. Thompson concluded that plaintiff was

8  substantially more limited in his physical abilities than was reflected

9  in the ALJ's ultimate residual functional capacity assessment.

10 Specifically, Dr. Thompson found that plaintiff could never lift or

11 carry more than 10 pounds, and that he could lift and carry less than 10

12 pounds only occasionally.  (TR 489).  Dr. Thompson also assessed marked

13 to moderate limitations in nearly all other areas of plaintiff's

14 physical abilities (TR 489-93).[2]

15      The ALJ rejected Dr. Thompson's opinion. In doing so, the ALJ cited

16 three reasons: (1) that the question of disability was reserved only for

17 the Commissioner, (2) that the preponderance of the evidence undermined

18 Dr. Thompson's opinion, and (3) that Dr. Thompson had listed physical

19 therapy as a treatment modality, but that plaintiff often failed to

20 comply with his proscribed physical treatment regimen.  (TR 29).  None

21 of these three reasons, according to plaintiff, withstands scrutiny.

22      The opinion of an examining physician is entitled to greater weight

23 than that of a non-examining physician.  Lester v. Chater, 81 F.3d 821,

24 830 (9th Cir. 1996).  As with a treating physician, the Commissioner

25

26      [2] Dr. Thompson also diagnosed plaintiff with chronic
27 depression and opined that plaintiff was incapable of even low
   stress arising from work.  (TR 485, 491).

28

must present "clear and convincing" reasons for rejecting the uncontroverted opinion of an examining physician and may reject the controverted opinion of an examining physician only for "specific and legitimate reasons that are supported by substantial evidence." Id. at 830-31. It is error for an ALJ to neither explicitly reject the opinion of an examining physician nor set forth specific, legitimate reasons for crediting a non-examining medical advisor over an examining physician. Nguyen v. Chater, 100 F.3d 1462 (9th Cir. 1996).

Here, the ALJ failed to set forth sufficient reasons supported by the record to reject Dr. Thompson's opinion. First, the record does not support the ALJ's assertion that Dr. Thompson overstepped his authority by opining that plaintiff could not sustain gainful employment. Although the ALJ is correct that the issue of whether plaintiff can sustain gainful employment is the reserved for the Commissioner, Dr. Thompson nevertheless assessed specific limitations regarding plaintiff's physical abilities. Second, the ALJ's reference to "the preponderance of the evidence" is not a "specific and legitimate" reason for rejecting Dr. Thompson's opinion. While there may be some medical evidence in the record that could justify rejecting Dr. Thompson's opinion, the ALJ did not cite any such medical evidence in her opinion.

As such, the only remaining reason justifying the ALJ's decision is plaintiff's purported failure to comply with his proscribed treatment plan. But this reason, on its own, cannot serve as a basis to reject Dr. Thompson's opinion.

In short, the ALJ did not cite sufficient reasons to reject Dr. Thompson's opinion. This error was not harmless because Dr. Thompson's opinion, if credited, would undermine the ALJ's residual functional

1  capacity finding.   See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d

2  1155, 1162 (9th Cir. 2008) ("[T]he relevant inquiry in this context is

3  not whether the ALJ would have made a different decision absent any

4  error, it is whether the ALJ's decision remains legally valid, despite

5  such error."). Accordingly, on remand, the ALJ must reconsider the

6  medical evidence regarding plaintiff's purported physical limitations,

7  including that of Dr. Thompson.   The ALJ is not instructed to credit Dr.

8  Thompson's opinion as true; however, the ALJ cannot reject that opinion

9  unless the ALJ cites legitimate and specific reasons supported by the

10 record.

11             B.    The ALJ's Consideration of the Side Effects from
                     Plaintiff's Medication
12

13        Plaintiff contends that the ALJ failed to properly consider the

14 side effects of plaintiff's medications.   An ALJ must consider all

15 factors that might have a significant impact on an individual's ability

16 to work, including the side effects of medication.   Erickson v. Shalala,

17 9 F.3d 813, 817-18 (9th Cir. 1993).   When a plaintiff testifies about

18 experiencing a known side effect associated with a particular

19 medication, the ALJ may disregard the testimony only if he "support[s]

20 that decision with specific findings similar to those required for

21 excess pain testimony." Varney v. Sec'y of Health and Human Servs., 846

22 F.2d 581, 585(9th Cir. 1988), modified by, 859 F.2d 1396 (9th Cir.

23 1988).   Side effects not "severe enough to affect [plaintiff's] ability

24 to work" are properly excluded from consideration.   Osenbrock v. Apfel,

25 240 F.3d 1157, 1164 (9th Cir. 2001).   Ultimately, a plaintiff bears the

26 burden of demonstrating that his use of medications caused a disabling

27 impairment.   See Miller v. Heckler,   770 F.2d 845,  849 (9th Cir.

28                                   7

1    1985)(plaintiff failed to meet burden of proving medication impaired his

2    ability to work because he produced no clinical evidence).

3         Here, the ALJ does not appear to have considered whether and to

4    what extent the side effects of plaintiff's medications impacted

5    plaintiff's ability to work.  At the hearing before the ALJ, plaintiff

6    testified that using his prescribed medications impacted his ability to

7    concentrate, caused him to vomit, induced drowsiness, and threatened the

8    sobriety that he had maintained for well over a decade.[3]  (TR 49-52).

9    Indeed, plaintiff suggested that he tried to resist taking his

10   medication, despite being instructed to do so by physicians, because he

11   feared falling back into drug addiction.  (TR 49).

12        Despite this testimony, the ALJ's opinion denying plaintiff

13   benefits mentioned nothing about these side effects and concerns.  This

14   omission is significant because the ALJ, citing records from 2004 and

15   2005, noted that plaintiff responded well to pain medication.  (TR 28).

16   But in doing so, the ALJ did not consider the extent to which plaintiff

17   experiences adverse physical and mental side effects from those same

18   medications.  Moreover, the ALJ's conclusion does not account for

19   plaintiff's testimony that he sometimes foregoes his medication –

20   thereby enduring the pain that the medications were designed to

21   alleviate – because he fears the addictive nature of the medication.

22   Although the ALJ's failure to consider these side effects may not be

23   sufficient on its own to warrant remand, the same conclusion cannot be

24   reached when that failure is coupled with the ALJ's decision to reject

25

26        [3] Plaintiff was an regular heroin user, as well as an abuser
     of other drugs.  (TR 42).  However, as the ALJ noted, plaintiff's
27   "polysubstance dependence is in full remission 14 years by
     history."  (TR 29).

28

8

Dr. Thompson's testimony.  Accordingly, the ALJ should consider the impact of the side effects of plaintiff's medications and whether or not they are severe enough to affect plaintiff's ability to work.[4]

CONCLUSION

Accordingly, it is ordered that the matter be **REMANDED** pursuant to sentence four of 42 U.S.C. §405(g) to the Commissioner for further administrative action consistent with this opinion.

DATED: *April 1, 2010*

_____
CAROLYN TURCHIN
UNITED STATES MAGISTRATE JUDGE

---

[4] The court notes that the ALJ rejected plaintiff's statements regarding the "intensity, persistence and limiting effects of [his medically determinable impairments]  . . . to the extent that they [were] inconsistent with" the ALJ's residual functional capacity.  (TR 29).  This finding does not extend to plaintiff's testimony about how the side effects of his medication impact his ability to work.

# SOCIAL SECURITY ADMINISTRATION
## Office of Disability Adjudication and Review

## DECISION

| IN THE CASE OF | CLAIM FOR |
|---|---|
| | Period of Disability, Disability Insurance Benefits, and Supplemental Security Income |
| Jarvis Lee Dickson Sr | |
| (Claimant) | |
| | 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 |
| (Wage Earner) | (Social Security Number) |

## JURISDICTION AND PROCEDURAL HISTORY

On July 10, 2006, the claimant filed a Title II application for a period of disability and disability insurance benefits. The claimant also protectively filed a Title XVI application for supplemental security income on July 10, 2006. In both applications, the claimant alleged disability beginning July 25, 2004. These claims were denied initially on April 5, 2007, and upon reconsideration on July 12, 2007. Thereafter, the claimant filed a written request for hearing on August 27, 2007 (20 CFR 404.929 *et seq.* and 416.1429 *et seq.*). The claimant appeared and testified at a hearing held on January 13, 2009, in Fresno, California. Judith L. Najarian, an impartial vocational expert, also appeared at the hearing. The claimant is represented by Michael Stretton, III, a non-attorney representative of the Binder and Binder firm.

## ISSUES

The issue is whether the claimant is disabled under sections 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

With respect to the claim for a period of disability and disability insurance benefits, there is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met. The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through December 31, 2010. Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

After careful consideration of all the evidence, the undersigned concludes the claimant has not been under a disability within the meaning of the Social Security Act from July 25, 2004 through the date of this decision.

**24**

See Next Page



## APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 404.1520(a) and 416.920(a)). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the undersigned must determine whether the claimant is engaging in substantial gainful activity (20 CFR 404.1520(b) and 416.920(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 404.1572(a) and 416.972(a)). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 404.1572(b) and 416.972(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA (20 CFR 404.1574, 404.1575, 416.974, and 416.975). If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, and work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c) and 416.920(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1521 and 416.921; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, the undersigned must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). If the claimant's impairment or combination of impairments meets or medically equals the criteria of a listing and meets the duration requirement (20 CFR 404.1509 and 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the undersigned must first determine the claimant's residual functional capacity (20 CFR 404.1520(e) and 416.920(e)). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. In making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e), 404.1545, 416.920(e), and 416.945; SSR 96-8p).

**25**



Jarvis Lee Dickson Sr (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)                                      Page 3 of 7

Next, the undersigned must determine at step four whether the claimant has the residual functional capacity to perform the requirements of his past relevant work (20 CFR 404.1520(f) and 416.920(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b), 404.1565, 416.960(b), and 416.965). If the claimant has the residual functional capacity to do his past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 404.1520(g) and 416.920(g)), the undersigned must determine whether the claimant is able to do any other work considering his residual functional capacity, age, education, and work experience. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and meets the duration requirement, he is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512(g), 404.1560(c), 416.912(g) and 416.960(c)).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, the undersigned makes the following findings:

**1.   The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.**

**2.   The claimant has not engaged in substantial gainful activity since July 25, 2004, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).**

**3.   The claimant has the following severe impairments: cervical degenerative disc disease, cervical strain, lumbar degenerative disc disease, lumbar strain, and left shoulder arthropathy (20 CFR 404.1520(c) and 416.920(c)).**

Because these are medically determinable impairments that have lasted more than 12 months and cause more than a slight limitation of the claimant's physical or mental ability to do basic work activities, the Administrative Law Judge finds at step two of sequential disability analysis that the claimant's impairments are "severe" as defined in the Regulations.

The claimant's medically determinable mental impairments of depression and anxiety for which he is not getting treatment and which are not a problem, are considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere.

**26**

See Next Page



Jarvis Lee Dickson Sr (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)                                Page 4 of 7

In making this finding, the undersigned has considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria.

The first functional area is activities of daily living. In this area, the claimant has no limitation. The next functional area is social functioning. In this area, the claimant has no limitation. The third functional area is concentration, persistence or pace. In this area, the claimant has mild limitation. The fourth functional area is episodes of decompensation. In this area, the claimant has experienced no episodes of decompensation which have been of extended duration. Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, they are nonsevere (20 CFR 404.1520a(d)(1) and 416.920a(d)(1)).

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

**4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).**

No physician has opined that the claimant's condition meets or equals any listing, and the state agency physicians have opined that it does not.

**5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work, specifically, the claimant can lift and carry 20 pounds occasionally, 10 pounds frequently, stand/walk for six hours in an eight hour workday, and sit for six hours in an eight hour workday with a sit/stand option. Additionally, he has postural limitations to include occasional stooping, crouching, crawling, and climbing.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

**27**

See Next Page



Jarvis Lee Dickson Sr (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)                                      Page 5 of 7

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

The claimant sustained injuries in a motor vehicle accident on July 24, 2004, as the driver with seat belt when rear ended. He complained of low back pain a few days later, and was treated with Vicodin. Cervical spine radiology studies showed prominent degenerative changes in the lower cervical spine especially at C5-6 and lumbar spine studies showed mild degenerative changes in the lower lumbar spine with transitional lumbosacral segment but no evidence of acute change. The claimant also complained of left upper extremity and left shoulder pain (Exhibit 13F).

On February 28, 2005, MRI studies of the claimant's cervical spine showed a disc extrusion at the C4-5 interspace with hypertrophic changes of the anterior vertebral body margins with features of a small disc protrusion/extrusion at the C6-7 level greater to the left (Exhibit 1F).

The claimant sought ongoing treatment for pain from John F. Petraglia, M.D., at the San Joaquin Valley Interventional pain management group with complaints of back pain. On December 2, 2004, the claimant had good range of motion in the neck without significant impairment in range of motion. Physical examination was positive for facet joint pain at C4-5 with tenderness upon palpation. Shoulder examination revealed impairment in range of motion with numbness and tingling at the upper volar aspect of the forearm, upper arm, and posterior forearm. There was pain at L4-S1 bilaterally in the lumbar spine with marked trigger point tenderness and myofascial spasm in the paravertebral region. Epidural steroid injections were recommended. In April 2005, the claimant reported that his pain was overall improved and he was getting excellent pain relief from a regimen of Norco and Soma that he took regularly (Exhibit 2F).

On February 12, 2007, the claimant saw Shireen Damania, M.D., for a consultative psychiatric evaluation. Upon physical examination, Dr. Damania found the claimant's mood to be mildly anxious with a broad affect appropriate to the thought content and situation. Dr. Damania diagnosed an anxiety disorder not otherwise specified and polysubstance dependence in full remission for 14 years by history and assigned a global assessment of functioning scale score of 61. Dr. Damania found no limitations due to psychiatric impairment (Exhibit 6F).

In October 2005, the claimant was seen by Diego Allende, D.O. for follow up for neck injury and low back pain and left shoulder. He continued to complain of spasm and symptoms. MRI

See Next Page

**28**

EXHIBIT

studies showed cervical extrusions.  In November 2005, records indicated that the claimant was very inconsistent with therapy visits and that he showed up when he wanted, never on schedule, but said he was scheduled.  The physical therapist was unable to establish any continuity of care. The claimant needed to come in two to three times per week to make any headway.  On June 22, 2006, Dr. Allende diagnosed chronic cervical strain/sprain and chronic lumbar sprain/strain based on ongoing discomfort and problems (Exhibit 3F).

The undersigned finds that the claimant's drug use is not material as he is no longer using medical marijuana.  The evidence of record establishes that the claimant's polysubstance dependence is in full remission 14 years by history (Exhibit 11F).

Social Security Ruling 96-6p requires that the opinions of State Agency medical consultants be considered in deciding the claim now before the undersigned.  Such opinions are those of non-examining, non-treating medical sources and can be given weight insofar as they are well supported by evidence in the case record as a whole.  Such a finding would require that the State Agency physician make a well explained rationale for his or her findings and opinions.  For the instant claim, the State Agency consultants determined that the claimant could perform a light level of work activity with no severe mental impairment.  The undersigned finds the opinions of the State Agency consultants to be consistent with the objective evidence of record for the period at issue.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

Pertinent treatment records indicated that the claimant was very inconsistent with therapy visits and that he showed up when he wanted, never on schedule, but said he was scheduled.  The physical therapist was unable to establish any continuity of care due to the claimant's failure to comply with prescribed treatment regimens.  The claimant's allegations of disabling pain and limitation are not fully credible to the extent alleged and his actions in routinely failing to comply with prescribed treatment regimes impeach his credibility.  Additionally, the record shows the claimant has had a good response to medication.  Consequently, the undersigned finds that the claimant's testimony is inconsistent with the preponderance of the evidence of record.

As for the opinion evidence, Dr. Thompson's opinion that the claimant is unable to sustain any gainful employment and cannot work concerns issues specifically reserved to the Commissioner (Exhibit 20F).  Moreover, these opinions are not supported by the preponderance of the evidence of record.  Dr. Thompson lists "physical therapy" as a treatment modality (Exhibit 21F); however, the record clearly states that the claimant did not adequately participate in his own care and routinely failed to show up for scheduled appointments, showed up only when he wanted to and never on schedule, and that the physical therapist was unable to establish any continuity of care due to the claimant's failure to comply with prescribed treatment regimens.  Therefore, the undersigned gives little weight to the opinions of Dr. Thompson.

**29**

EXHIBIT

Jarvis Lee Dickson Sr (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)                    Page 7 of 7

In sum, the above residual functional capacity assessment is supported by the opinions of the State Agency consultants and the opinions of the consultative examiners (Exhibits 6F, 7F, and 8F).

**6.   The claimant is capable of performing past relevant work as a greenskeeper, auto sales person, substance abuse counselor, manager/retail, reservation agent, and case manager. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).**

The vocational expert testified that the claimant has past relevant work activity as a greenskeeper, semi-skilled, medium level work activity; car sales/auto, skilled, light level work activity; substance abuse counselor, skilled, sedentary work activity as generally performed, but light work activity as performed by the claimant; manager, retail, skilled, light level work activity; reservation agent, semi-skilled, sedentary level work activity; and a case manager/substance abuse administrator, semi-skilled, light level work activity.

In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed.

**7.   The claimant has not been under a disability, as defined in the Social Security Act, from July 25, 2004 through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).**

<u>**DECISION**</u>

Based on the application for a period of disability and disability insurance benefits filed on July 10, 2006, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.

Based on the application for supplemental security income protectively filed on July 10, 2006, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

/s/ *Sharon L. Madsen*
_____
Sharon L. Madsen
Administrative Law Judge

April 15, 2009
_____
Date

**30**

